```
                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF INDIANA
                         SOUTH BEND DIVISION

   JOY PHILLIPS,                     ) Cause No.:
                                     ) 3:15-cv-527-PPS
          Plaintiff,                 )
                                     )
       vs.                           )
                                     ) South Bend, Indiana
   CITY OF SOUTH BEND, et al.,       ) July 12, 2016
                                     ) (FTR Recorded)
          Defendants.                )
   _____     )


                      TRANSCRIPT OF PROCEEDINGS
         (STENOGRAPHICALLY PRODUCED FROM ELECTRONIC RECORDING)
             BEFORE THE HONORABLE CHRISTOPHER A. NUECHTERLEIN

   APPEARANCES:

   For the Plaintiff:        MR. DANIEL H. PFIEFER
                             Pfeifer Morgan & Stesiak
                             53600 North Ironwood Drive
                             South Bend, Indiana   46635

                             MR. JEFFREY S. McQUARY
                             Brown Tompkins Lory & Mastrian
                             608 East Market Street
                             Indianapolis, IN   46202

   For the Defendants:       MR. MICHAEL J. HAYS
                             Tuesley Hall Konopa LLP
                             RiverPlace Professional Center
                             212 East LaSalle Avenue, Suite 100
                             South Bend, Indiana   46617

   Also Present for the
   City of South Bend:       MS. CRISTAL BRISCO
                             MS. STEPHANIE STEELE
```

*Joanne M. Hoffman*
*Federal Certified Realtime Reporter*
*119 Robert A. Grant Courthouse*
*204 South Main Street*
*South Bend, Indiana   46601*
*Joanne_Hoffman@innd.uscourts.gov*
*(574)246-8038*

```
 1            THE CLERK:  Cause Number 3:15-cv-527, Joy Phillips v.
 2   City of South Bend, et al.
 3            Would counsel please state your appearance.
 4            MR. PFEIFER:  Daniel Pfeifer for Joy Phillips.
 5            THE COURT:  Mr. Pfeifer.
 6            MR. PFEIFER:  Good morning, Your Honor.
 7            THE COURT:  Good morning.
 8            MR. McQUARY:  Jeff McQuary also for Joy Phillips.
 9            THE COURT:  Mr. McQuary.
10            And Ms. Phillips, no doubt.
11            And the fourth?
12            (Inaudible.)
13            THE COURT:  The husband.  Very well.  Welcome.
14            MR. HAYS:  Michael Hays on behalf of the defendants.
15            THE COURT:  Mr. Hays.
16            MR. HAYS:  And Cristal Brisco with the City and also
17   Stephanie Steele from her office.
18            THE COURT:  Ms. Steele.
19            MR. HAYS:  And then Scott Ruszkowski, Chief of Police,
20   and Jeff Rynearson, the Assistant Chief.
21            THE COURT:  All right.  Thank you all for coming.
22            It's kind of a sad day, particularly with what
23   occurred in the courthouse up in Michigan.  I was just speaking
24   with the United States Marshal here about that because we don't
25   know yet what the facts are, as to whether the individual who
```

```
 1   was being moved from a cell to a courtroom was handcuffed or
 2   not.  However, it was a very tragic situation, and those of us
 3   in courtrooms and courthouses must be ever vigilant.
 4            All right.  Let's switch from that to this.
 5            This is a settlement conference.  I see some familiar
 6   faces; that is, folks who've participated in this process
 7   before.  Apparently, despite their experience, they're back for
 8   more.  So good luck.
 9            For those of you who haven't participated, I'm going
10   to take a little time to describe what we're about to do and
11   what we hope to do and how best to approach it so we can be
12   successful.
13            Before we do that, let's take a look at where we are
14   in this case with the deadlines and such.
15            I see discovery is not concluded; that the deadline is
16   Halloween, October 31st.  So there's still time to do
17   discovery.  And now that I say that, I think I remember having
18   a conversation with the lawyers as to whether this case is ripe
19   for settlement because, oftentimes, if we haven't done adequate
20   discovery, particularly depositions, we have contentions.  We
21   don't really know what the facts are until they're submitted
22   under oath and perhaps subject to cross-examination, and then
23   you can evaluate the facts and credibility.  But I see you're
24   all here with smiling faces, to a degree smiling, so I presume
25   that we can proceed.
```

```
 1            Any reason why we can't proceed even though discovery
 2   hasn't closed?
 3            MR. PFEIFER:  No, Your Honor.
 4            MR. HAYS:  No, Your Honor.
 5            THE COURT:  Fine.  Then there's also a pending motion
 6   to compel, which we can moot that all out, make that simply go
 7   away if we're successful today.  So we're just going to let
 8   that dog sleep.  If we're not successful today, we'll have to
 9   wake it up, which is to say that I think I put in my order that
10   the response to it is due, I want to say, July 27th, or
11   something thereabouts.  Again, I see heads nodding.  It's
12   always refreshing to know that my memory is still there.
13            I don't know whether I will be able to get to that
14   motion, and perhaps I shouldn't, and I will tell you why I
15   shouldn't.  The lawyers who've participated in these settlement
16   conferences know that you get very deep into them, and that's
17   good to plumb the depths of the case and motivation to try to
18   reach a mutually agreeable resolution; but then if you go back
19   in litigation, maybe you've learned too much, and it may affect
20   how you may rule.  That's why I like to do the mediations, and
21   then the trial judge who has the trial doesn't know what goes
22   on and can call the balls and strikes totally unaffected by
23   what was said or positions taken or such.
24            I think some of you know that my time on the bench is
25   drawing to a close.  Regrettably, but inevitably, we move on.
```

```
 1  So if it is ripe on July 27th, there would also be an
 2  opportunity for a reply to that response, and I may simply not
 3  be able to get to it.
 4          So, A, I may not have time to get to it, and, B, maybe
 5  I shouldn't.  So it would be left to my successor, who is Judge
 6  Gotsch.  Is there any reason why he shouldn't be involved in
 7  this case?  Sometimes we get cases from across the street.  Are
 8  you saying yes, no, it doesn't matter?
 9          UNIDENTIFIED SPEAKER:  No, sir.  That's fine.
10          THE COURT:  All right, because he would inherit that
11  pending motion.
12          So we'll address that.  Let's take it off my calendar
13  and, perhaps, his as well by settling this case.
14          For those of you who have participated in this before,
15  you know what I'm going to say.  I think it's important that we
16  understand the process that we're about to engage in,
17  mediation; in particular, what it is not.  Because my view is
18  if you take the wrong attitude to this process, it inhibits or
19  restricts or prevents success.  If you have the right attitude,
20  then we can do amazing things.
21          So what am I talking about?  Well, the litigation
22  process is the process that we have when there are disputes
23  between citizens.  You file a complaint, you go to court, you
24  get lawyers, and then you marshal up the facts and argue the
25  facts and the law and a neutral third party, a judge or jury,
```

 1   makes the decision.  Pretty textbook.  But as you already know
 2   in this process, it's complicated.  It's expensive.  It's time
 3   consuming, and also it's uncertain.  So that's litigation.
 4           But it's also adversarial, which is to say you are
 5   arguing your position and moving the facts in a particular way.
 6   You're trying to persuade a neutral third party that the way
 7   you see things is the way they should be, and that's okay for
 8   litigation.  That's how we engage in legal combat.  It's an
 9   adversarial process, and it works.
10           But that's not the process or attitude that works for
11   mediation, okay, because you don't have a neutral third party
12   to make the decision.  That is to say, I'm neutral, I'm a third
13   party, but I'm not going to make any decisions.  That's not my
14   role in mediation.  My role is to help you reach a mutually
15   agreeable resolution.
16           You see, if you try this case, you're going to get a
17   decision by Judge Simon, Chief Judge Simon, on, perhaps,
18   dispositive motions.  If you get past that, you'll have a jury
19   trial.  So you'll get decisions in this case, but, as I said,
20   they're a neutral third party.  And without being pejorative
21   about it, it's a cramdown decision.  What I mean by that is
22   neither the Court nor the jury cares much if you like it.
23   They're not here to please you.  They're here to make a
24   decision and then you're stuck with it.
25           So if you think there was an error of law, you could

1  then proceed to the Court of Appeals and argue it again; and if
2  you prevail, you're right back to where you started.  Nothing's
3  been changed, except time and money, and uncertainty continues.
4  All right.  That's that process.
5          Today is unique.  Today we suspend all the law.  As
6  the lawyers know, the law does not apply.  There's only two
7  rules that I employ in this process:  the rule of
8  reasonableness; if we can be reasonable in our positions, we're
9  more likely to reach agreement.  And, secondly, the rule of
10 civility; if we can simply be civil in our discourse.
11         The last rule shouldn't be a problem.  It never has
12 been.  But sometimes in emotional cases people become
13 emotional, and emotion does not help us.  So I ask you to check
14 that if there is any emotion there.  Sometimes there is.
15         Reasonableness; that can be difficult because it's
16 what you think is reasonable.  Again, remember, don't persuade
17 me.  I'll throw in my two cents if I think it's helpful, but
18 that's pretty much what it's worth:  two cents.  When we talk
19 about the law and the facts, you know, I'll opine, but it's not
20 a real opinion.  That's something that Chief Judge Simon will
21 give after you've briefed it, and you'll get a nice opinion.
22         So don't try to persuade me.  More importantly, you
23 should persuade the other side.  So the way we get to "yes" is
24 for the plaintiff to attempt to persuade the defendants that
25 the plaintiff's position is in the defendant's best interest,

so they should, of course, say "yes" to their position. And, similarly, the defendant's position, they shouldn't try to persuade me how strong it is. They should persuade the plaintiff that their offer is in the plaintiff's best interest and that that's why she should accept it.

If we persuade each other of the merits, why they should accept, we're more likely to get there. If we go in opposite or adversarial positions that, We don't want to pay a dime, and I want the sun and the moon and the stars, that's more like litigation, where a judge or jury will have to decide what to do. That doesn't bring us together; it just divides us.

So that's the attitude shift here that I want. I want an attitude here of let's get down, let's roll up our sleeves; we're going to be off the record, and let's figure out what's going to move us.

In doing this for over 16 years and almost 400 mediations, I'll tell you the way it works out. Frankly, it was very surprising to me, but it does. We will talk a little bit about the facts, and we'll talk a little bit about the law. But pretty soon we move beyond all of that and we talk about what it's going to take to get a deal done.

And that can be irrespective of the law and the facts because now we've really hit on the true motivation for today's process. It's what do you want to do? How serious are you

1   today to say today's the day of judgment, today's the day we
2   put everything on the table, we put our best offer, we put our
3   best view of it, and then try to get a settlement?  And if
4   you're successful, if you reach a settlement -- and I can say
5   that in the vast majority of the cases we do -- if we do, it's
6   a perfect resolution.  It's not a cramdown decision.  It's
7   perfect justice.
8           Why?  Because if both parties to a dispute can say, I
9   can live with it, that's fair, whatever it is, I can live with
10  that, then, boom, we're done, and we've saved a lot of time, a
11  lot of energy, and everyone can go forward.
12          So there's a whole lot of advantages to this process
13  to, frankly, call a timeout to litigation, take the train off
14  the track, siderail it, try to figure out what it can take to
15  do it.  We're going to do it off the record so we can explore
16  anything, and whatever is said can't be used against anyone in
17  trial.  That's one of the rules of evidence.  So we can be free
18  and candid, and we can do something else; we can also be
19  creative.  Because the legal system is restrictive, a jury or
20  judge can only do what the law allows, but we can discuss
21  anything and do anything as long as we can reach an agreement.
22          All right.  So how do we do this?  Well, I'm going to
23  first meet with the plaintiff and counsel in chambers, and
24  we're going to talk about their case.  Then I'm going to meet,
25  again, off the record, with defense counsel.  And I'm going to

1   assume that whatever you tell me in these private meetings I
2   can share with the other side.  I'm going to assume that
3   because I'm assuming you're telling me facts that either are
4   known or should be known or we're going to talk about the law,
5   which is not confidential.
6           On the other hand, you may wish to share with me
7   confidential information.  And if it's helpful, do that, but
8   then tell me it's confidential.  Tell me that, Judge, they
9   don't know this, but, or, We don't want them to know this yet,
10  but; and as soon as I hear that you want something protected, I
11  will protect your confidences because I don't want anyone to
12  participate in this process and be prejudiced, that is, to have
13  their case hurt by the process.
14          So if you want to share something with me to give a
15  fuller context of your position, great, but just tell me, and
16  then I will.
17          Now, we'll go back and forth.  When we set this case,
18  I gave you the better part of the day, and this is one of the
19  rare days when I can say you actually have the whole day.  We
20  had a little excitement yesterday here criminally, but we don't
21  have a criminal calendar this afternoon.  So we can proceed if
22  we need to -- and I don't think that we will, but we can
23  proceed all day long.
24          So what I'm going to do is I'm going to proceed as
25  long as we wish to, but the end of the day does come at 4:30.

1           Okay.  Now, you are all here voluntarily, and here's
2   the other deal:  You can all leave voluntarily, okay?  That is
3   to say, you decide if we're making progress or not.  I'm here
4   simply to assist you.
5           So if at any point either side says, Judge, they are
6   being unreasonable; in our opinion, we're not making progress,
7   and we've got other things to do, okay, fine, we're done.  My
8   hope is that we don't get there.  But what that tells me -- if
9   one side says, We're done, we're walking -- is that the other
10  side wasn't giving encouragement, wasn't giving them nudges to
11  stay at the table.  And that's what you have to do.
12          When you are as far apart as you folks are, you have
13  to encourage the other side to remain so that they think we've
14  got a better shot at a mutually agreeable resolution today here
15  than if we take our shot in court with whatever the law and
16  facts are.  So encourage the other side.  Don't take those
17  adversarial positions.
18          Now, the next thing is, if we do receive mediation --
19  or an agreement, there's a couple of things we can do, and I
20  don't know about this because this always gets a little goofy.
21  One thing we won't do.  If we reach a settlement, we can come
22  back into court on the record as we are now and put the
23  essential elements of the settlement agreement on the record
24  with both sides agreeing that that's it.  Then it's assumed
25  that the parties will go out and hammer it out in writing.

```
 1          I'm going to ask:  Is this a case where we can have
 2  confidentiality?  And why I pause is because we're dealing with
 3  public entities.  I know there are public laws that require
 4  openness, but I've also seen them handled in different ways.
 5  So I will defer to the lawyers as to whether this case is
 6  susceptible to a confidential settlement or not.  I don't know
 7  who has to finally approve it.  If it is the City itself, it
 8  may not be able to be confidential, and it may have to go to
 9  the City Council.
10          So is that a possibility, I say, as I look to the City
11  Attorney, or not?
12          UNIDENTIFIED SPEAKER:  I have full settlement
13  authority, so it does not have to be approved by the Council.
14  With respect to the confidentiality of the agreement itself,
15  it's such that a public record (inaudible) have to be
16  disclosed.  However, we are able to put in language that says
17  that we will not speak about the terms of the settlement other
18  than to say that a settlement was reached (inaudible).
19          THE COURT:  All right.  Well, if both parties agree to
20  confidentiality, and if the law allows -- or to the extent the
21  law does allow that, you can pursue.  If that's the case, then
22  we will not put on the record what the essential elements are.
23  We'll just indicate for the record that the parties have
24  settled the case and that's all our record will show.
25          What we will not do is put the essential elements on
```

```
 1   the record and then seal the court record because I don't seal
 2   court settlements.  All right?  This is a public court.  Anyone
 3   can watch what we do.  So we'll just leave that towards the
 4   end, but that's the way we'll proceed.
 5          Now, I've indicated that I've done almost over 400
 6   settlement cases, and I'm going to guess -- but I've got pretty
 7   good guesses -- that the vast majority of those settlement
 8   cases were employment discrimination cases of one form or
 9   another because we do a lot of that, so I'm very well familiar
10   with how these things proceed.
11          How is that helpful?  Well, you may be suggesting
12   that, Judge, you're putting all of the burden on us to settle
13   this case, and what are you going to do?  Well, my role in this
14   process is to be the grease between the gears, to be the
15   facilitator, to assist, to push, to prod, to examine, and,
16   perhaps, to provide fresh eyes into a perspective of is this
17   reasonable.
18          In one sense -- and I've said this before -- I think
19   my role is very much like a realtor in real estate because, as
20   we all know, in real estate every piece of property has a
21   value, and it's unique.  But when you want to sell it to
22   determine what a reasonable price would be, you go to a realtor
23   and say, What are similar properties like?  What are comps
24   like?  Okay.  And if you're asking that much, the comps really
25   don't support it.  You may want it, but the market is not going
```

```
 1   to let you have that.  Or, actually, you're a little low.  You
 2   know, you could get a little bit more for it.
 3           That's what I do with these cases.  Because in all the
 4   cases that I have mediated, I keep statistics.  I know what
 5   cases settle for if they settle.  I know what juries do if they
 6   don't.  So I can give you some sense of what the reasonableness
 7   is of your position with some degree of empirical data of,
 8   Well, that's a nice view, but it's not my experience, or, I
 9   know of no jury that's done that.  And hopefully that helps
10   you, only to give you parameters of where you are.
11           Now, let me say this:  Let me leave you, before we
12   begin, with some confidence.  Because though you are very far
13   apart, we've settled cases where parties are further apart.
14   We've had cases literally where they are tens of millions of
15   dollars apart, governmental entities involved, lawyers from
16   Washington -- and we know they're the worst -- government
17   lawyers from Washington, and that's a separate breed, and we
18   know they're the worst because they have no sense of what a
19   dollar is worth; and despite that, we're able to bridge the gap
20   of tens of millions of dollars in one session and get it
21   resolved when it didn't seem like it would be possible.
22           We've had cases where there have been -- and some of
23   you may well understand this -- millions of dollars apart and
24   there have been two insurance companies, primary and a
25   secondary, and the plaintiff wanted $6 million and the primary
```

```
 1   carrier said, I've got a million.  And the secondary said, I've
 2   got 5, but I'm not even coming to the settlement.  Then there's
 3   a serious question of liability.  So if you want to settle this
 4   case, deal with them.  And the plaintiff would accept nothing
 5   less than 6.  It seemed like we're dead in the water, but we
 6   weren't.  The lawyers in that case actually called me the day
 7   before and said they didn't want to come because they couldn't
 8   see how it could work.  Even if the primary puts in all the
 9   money, the plaintiff wouldn't accept it, wanted more.  I said,
10   Well, come anyway.  Let's just talk.  Let's see what happens.
11   If it doesn't work, you'll be gone by noon.  So they came, and
12   they stayed, and they settled.
13           I've had civil cases similar to this where there are
14   what I'll call "political overtones" where, very candidly, I
15   had governmental entities that said, Judge, we cannot settle
16   because for us to settle would be an implicit admission that we
17   did something wrong, and that's kind of a political deal.  It's
18   not the money; it's not the issues; we don't want to go back to
19   say we settled because then everyone will say, What?  And we
20   would rather have a decision from this Court because then we
21   can say, Well, that's what happens in court.  Sometimes you
22   win; sometimes you lose.  And we can point to the Court and say
23   it was their decision, rather than voluntarily say, No, we
24   settled, because they'd be admitting that, perhaps, our
25   management, in this particular government entity, made some
```

1   management issues and mistakes.  Well, that case settled too,
2   even though they said they couldn't and wouldn't.
3           So how did that happen?  How did these crazy, wild
4   cases, so far apart, with political overtones, how did they
5   settle?  I would like to think it's me because that's the only
6   commonality that I see.  Different lawyers, different cases,
7   right?  But I know it's not.  It's not me.  It was them.
8           And today it's you.  If you have the attitude that
9   today is the day of judgment, today is the day that we're going
10  to get this case settled, then no bridge is too far, no gap is
11  not reachable or brought back together.  We can do this if you
12  want, and I will encourage you and help you, and I think we
13  can.
14          So there you have it.  That's how I proceed.
15          With that having been said, and with some of you
16  having never heard this before and others who have, is there
17  anyone here now who, having heard this, says, Well, if that's
18  the way we're going to proceed, I just assume not participate?
19  Because if you do, that's fine.  I respect that.  You've got a
20  constitutional right to litigate, and I took an oath of office
21  to support that, so it doesn't bother me a bit.  I'm here to
22  help.
23          So is there anyone here today who says, No, I don't
24  want your help; I'd just assume litigate?
25          (No response.)

1  THE COURT: I hear nothing, and that's a good sound.
2  The lawyers know silence is assent. You have agreed to the
3  very first point of mediation, which is agreed to the process.
4  You've agreed with my ground rules of having the proper
5  attitude, so we're off to a good start. But a long journey
6  begins with a single step, so we've made that first step.
7  Let's complete the journey, and let's begin.
8  So, Mr. Pfeifer and Mr. McQuary and Ms. Phillips and
9  Mr. Phillips, if you would join me in chambers, down the hall,
10 up the stairs.
11 It's 10:00. The first session takes about 45 minutes,
12 so we'll be with them.
13 Mr. Hays and company, you can stay or you can be back,
14 but then I'd like to see you and all parties at 10:45 in
15 chambers, and then we'll probably split into different rooms
16 where I'll go back and forth and begin.
17 All right. Let's proceed.
18 (Proceedings adjourned.)

*CERTIFICATION*

*I, JOANNE M. HOFFMAN, Federal Certified Realtime Reporter, certify that the foregoing is a correct transcript from the Electronic Record of Proceedings in the above-entitled matter.*

*Joanne M Hoffman*

*_____     July 15, 2016*
*Certified Realtime Reporter*
*United States District Court*
*Northern District of Indiana*
*South Bend Division*