# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| JOY PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Cause No. 3:15-CV-527 |
| vs. | ) |
| | ) |
| CITY OF SOUTH BEND, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff, Joy Phillips, was a police officer for the City of South Bend. After suffering alleged discrimination, sexual harassment, and retaliation, she resigned in 2016 after 17 years with the force. Her claims fall into three categories: (1) being passed up for promotions because she is a woman; (2) being subjected to sexual harassment in the workplace; and (3) being unfairly disciplined and retaliated against after filing an EEOC charge. Defendants, City of South Bend, Ronald Teachman (the former police chief), and Scott Ruszkowski (the current police chief), move for summary judgment on all claims [DE 43]. Because I find that the promotion decisions were made for legitimate, non-discriminatory reasons, and the alleged sexual harassment was not severe or pervasive, summary judgment is granted on the first two claims. However, there are genuine issues of material fact that exist regarding the many investigations and disciplines that occurred right after Phillips filed her EEOC charge, so Defendants' motion for summary judgment is denied on the retaliation claims.

**Factual Background**

Phillips served as a police officer for the City of South Bend from April 19, 1999, to July 26, 2016. Her duties mainly consisted of serving as a Patrolman First Class, and she was assigned to the midnight shift. Additionally, Phillips served on the Hostage Negotiation Team and as a Field Training Officer ("FTO"), training new officers.

The failure to promote charges stem from when Phillips sought promotion to the rank of Sergeant in the Spring of 2015. Fifteen candidates applied. Phillips was passed over in favor of three men who got the positions - Ryan O'Neill, Martin Mullins, and Harvey Mills. Three captains interviewed the candidates and scored each interview. Ruszkowski (then the Division Chief), then blindly graded the "best work" or "best case" submitted by each candidate after their names had been removed from the documents. [DE 44-4 at 3.] Ruszkowski's scores were then combined with the interview panel scores, and the candidates were then ranked. [*Id.* at 3-4.] Phillips ranked 9th out of the 15 candidates. [*Id.* at 4.] Although Teachman made the final decision about who to promote, he was not on the panel that graded the candidates, he does not know why Phillips was ranked in the middle of the pack, and he merely received and ultimately adopted the recommendation that the 3 males be promoted. [Teachman Dep. at 46, 39-40.] While Phillips argues that she had a better disciplinary record than the promoted officers, the record shows the contrary: O'Neill had 15 letters/reports of commendation and 4 letters of reprimand; Mullins had 14 letters/reports commending his work, 2 letters of discipline, and 1 verbal warning for

2

drawing a smiley face on a banner; Mills had 36 letters/reports of commendation and only 1 letter of discipline and 2 verbal warnings; and while Phillips also had commendations and submitted letters of recommendation, she had 56 disciplinary issues and uses of force, and two incidences that concerned Brady/Giglio issues. [DE 44-4 at 8; Ruszkowski Aff. at ¶ 9.]

With regard to the sexual harassment claims, Phillips alleges she suffered sexual innuendo and other derogatory remarks that created a hostile work environment. Phillips claims her supervisor, Lt. Tim Lancaster, told a young cadet officer that he should watch out for Phillips because even though she was married, she would attempt to bed him. [Phillips Dep. at 48.] Lancaster denies he said this, but Phillips claims he also "belittled her" when she tried to talk with Lancaster about the comment. [*Id.* at 49.] She later learned that Lancaster told another supervisor that Phillips was promiscuous and flirtatious with new officers and should not be a FTO. [*Id.* at 50.] Another officer, Dan Skibbens, insinuated that Phillips was promiscuous when she corrected him about her married name, and he replied, "[y]eah, this week it is." [*Id.* at 58-59.] During roll call, when Phillips asked what type of uniform she should wear to an upcoming class, Paul Daley responded, "for you, a miniskirt and high heels." [*Id.* at 88.] While Phillips did discuss some of these incidents with her Captain, she did not file any formal complaints with the City. [Cadotte Dep. at 30-31, 37, 51.]

Phillips filed her Charge of Discrimination with the EEOC on October 23, 2014. Following that event, there was a dramatic increase in the number of investigations and

3

disciplinary actions against Phillips. Prior to filing the charge, Phillips had received three citizen complaints that were sustained in her 14 years of duty, and was the subject of three administrative investigations. [DE 44-4 at 5-6.] Since filing the EEOC charge, Phillips has been the subject of 12 administrative investigations, resulting in 7 imposed or proposed disciplines. [Phillips Dec. ¶ 10.] Six weeks after filing the EEOC charge, Phillips received a 5-day suspension on December 2, 2014, for allegedly making defamatory statements about another officer who was in the process of being hired. [Phillips Dep. at 118-30.] Phillips alleges she received punishment for her conduct in that incident which actually occurred a year and a half earlier. [*Id.* at 113.]

During the months after the EEOC charge, one supervisor, Sgt. Mullins, filed multiple complaints against Phillips resulting in Internal Affairs investigations. [Ruszkowski Dep. at 160; Phillips Dec. ¶ 23.] One investigation that Phillips was informed of on October 28, 2015, was that Phillips violated a policy by disregarding other officers from a ShotSpotter alert (telling other officers not to respond to an electronically-detected report of gunshots fired). [Phillips Dec. ¶ 13; 23(F).] This occurred despite Phillips telling Mullins this was a common practice and other officers did the same thing. *Id.* Mullins counseled male officers involved in the same incident, while Phillips was subjected to formal discipline - a letter of reprimand was placed in her file. [Ruszkowski Dep. at 96; Phillips Dec. at ¶ 23(F); DE 44-3 at 9-10.]

Mullins also charged Phillips with being insubordinate on October 28, 2015, because he ordered her not to speak to another officer about a lethality assessment.

[Ruszkowski Dep. at 120.] The conversation was tape recorded, and Phillips alleges that she asked Mullins if she needed to speak to the other officer and Mullins replied that she did not need to, because he already did. [Phillips Dep. at 137-38.] Phillips says that Mullins did not give her a direct order not to speak to another officer about the assessment. *Id.* The discipline for that incident was imposed on March 2, 2016, a letter of reprimand was placed in Phillips' file, and she received a 5-day suspension without pay. [Phillips Dec. at ¶ 23(G); DE 44-3 at 15-16.]

Phillips also alleges that Mullins deliberately withheld one of her police reports so he could discipline her for going off shift without filing a report. [Phillips Dec. ¶¶ 14-20.] Phillips received a letter of reprimand in her file and a 3-day suspension without pay for this. [DE 44-3 at 13-14.]

An investigation was also undertaken and Phillips received a letter of reprimand in her file and a one-day suspension without pay for allegations that she failed to collect the syringes used by a heroin overdose victim and note this in her report before the end of her shift. [DE 44-3 at 11-12.] According to Phillips, she arrived on that scene at 5:45 a.m., revived the overdose victim, and the paramedics removed the syringes from the victim's pants. [Phillips Dec. ¶ 25.] She then accompanied the victim to the hospital, went home to change, and returned to begin an overtime shift. [Phillips Dep. at 135.] By the time Sgt. Mullins' request came at 6:45 a.m. to collect the syringes, Phillips' shift had ended. So she collected them on her overtime shift and submitted a corrected report at 11:01 a.m., which was technically the next business day, but just about 3 hours after the

5

incident occurred. [Phillips Dec. ¶ 26.]

The most serious investigation involved an incident at Fox Street, where Chief Ruszkowski accused Phillips of making contact with a barricaded subject without having been called to the scene by Dispatch or a commander. Phillips alleges she had communicated by text message and by phone with the officer on the scene and with Aaron Cassel (commander of the Hostage Negotiation Team), and they were aware that she was going to speak to the barricaded person. [Phillips Dec. ¶¶ 28-29.] During the investigation which occurred 5 months after the incident, Phillips had trouble remembering the details of the conversations, so she asked the Assistant Director of Communications to produce the Dispatch records. [*Id.* at ¶¶30-32.] She never got the tape recording, but Phillips got in trouble because she did not know that she had to get the Chief of Police's approval to request an "on demand" phone line. [*Id.* at ¶ 34.] According to Ruszkowski, however, Phillips was disciplined mainly because she called police dispatch to have herself assigned to the scene and then, without the knowledge of the officers on site, called the barricaded person and began negotiating with him. [Ruszkowski Aff. ¶¶ 20-25.] Phillips received a 45-day suspension without pay for this incident and removal from the Hostage Negotiation Team. [DE 44-3 at 17-20.]

Phillips alleges that many of the investigations are for incidents long past, violating the collective bargaining agreement specifying that discipline must be proposed within 60 days of commencing an internal affairs investigation. [DE 45 at 5-6.] In response, the City claims the reason for the delay was the result of unexpected

staffing disruptions. [Schweizer Aff. ¶ 8.] However, the City acknowledges that after Internal Affairs Investigator, Lt. Lee Ross, resigned in 2015, his replacement was hired just three months later. [*Id.* at ¶ 11.]

Ruszkowski summoned Phillips to his office on March 2, 2016, and gave her the charges that totaled a 54-day suspension without pay and removal from the Hostage Negotiation team. [Ruszkowski Aff. ¶¶ 27-29.] When Phillips refused to sign the documents acknowledging receipt, Ruszkowski relieved her of her duties indefinitely, with pay. [*Id.* at ¶ 29.]

Phillips appealed the one-day, three-day, and five-day suspensions. [Phillips Dep. at 134.] Those suspensions and reprimands were all upheld. *Id.* Phillips also appealed the 45-day suspension to the Board of Public Safety, which pursuant to Ind. Code § 36-8-3-4(c), may review discipline exceeding a five day suspension. But before the Board held a hearing on that charge, Phillips left. On July 26, 2016, Phillips resigned to work at the Elkhart City Police Department.

**Discussion**

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Regarding the employment discrimination claims, I note that the Seventh Circuit

7

recently abandoned the separation of "direct" from "indirect" evidence on summary judgment and held that "[e]vidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'" *Ortiz v. Warner Enters.*, 834 F.3d 760, 765 (7th Cir. 2016). The Court also reiterated that the "convincing mosaic" is not a legal test. *Id.* Rather, the Court held that all evidence should be considered together to understand the pattern it reveals. *Id.* Finally, the Court clarified that its decision did not affect the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or any other burden-shifting framework. 834 F.3d at 766.

## I. Failure To Promote Claims

Phillips has sued Defendant Teachman for sex discrimination under section 1983 for failure to promote her to the position of Sergeant in 2015. Under the *McDonnell Douglas* rubric, Phillips must first produce evidence of a prima facie case for failure to promote; if she does so, then Defendants must produce evidence of "a legitimate nondiscriminatory reason for the employment action"; if the employer produces evidence of a legitimate reason, Phillips must then produce evidence that the employer's "stated reason is a pretext." *Riley v. Elkhart Cmty. Schools*, 829 F.3d 886, 891-92 (quoting *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 790 (7th Cir. 2015) (citing *McDonnell Douglas*, 411 U.S. at 802-04.))

To demonstrate a prima facie case for failure to promote, Phillips must produce

8

evidence showing that: "(1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position." *Riley*, 829 F.3d at 892 (citing *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016)). Summary judgment for the employer is proper if the employee fails to establish any of the elements of the prima facie case. *Id.* (citing *Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008)).

Phillips has failed to present a prima facie case of employment discrimination in Teachman's failure to promote her to Sergeant. Phillips has not shown that the 3 men selected for Sergeant were not better qualified for the position than her. Rather, Defendants have pointed to the record showing that the men promoted had less disciplinary issues and scored higher in the application and interview process. [DE 44-4 at 8; Ruszkowski Aff. at ¶¶ 9-11.]

Even if Phillips had made out a prima facie case (and she has not), summary judgment would still be warranted because Teachman has put forth a nondiscriminatory reason for his decision - Phillips ranked 9th out of 15 in the ranking process. Even if Phillips could show that this assessment was somehow wrong, this alone is not enough to show pretext for discrimination. *See Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001) ("[T]he court's role is not to determine whether [the employer's] decision was right, but whether [the employee] presented sufficient evidence that [the employer's] reason was a lie for the action it took."). Phillips has not

9

presented any such evidence of pretext.

The Seventh Circuit has a high bar in cases like this, where the provided non-discriminatory reason is that they selected the most qualified candidate for a position:

> [W]e now hold that where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue . . . In other words, in effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.

*Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180-81 (7th Cir. 2002) (internal quotations and citations omitted). Here, there is no evidence that Phillips was clearly more qualified for the Sergeant position.

Phillips' entire argument in support of her position that Teachman's reason was pretextual is that "the City promoted a known racist, Ryan O'Neil. It also promoted someone who had previously been a Sergeant and was demoted for dereliction of duty." [DE 45 at 14.] And although the process of grading the reports was blind, Ruszkowski admitted that he usually knows the candidates' identity. *Id.* Even assuming these things are true, again, pretext "involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Burton v. Bd. of Regents of the Univ. Of Wis. Sys.*, 851 F.3d 690,

10

698 (7th Cir. 2017) (quotation omitted). Just disagreeing with an employer's reason does not meet his standard. Moreover, "the question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason was his reason: not a good reason, but the true reason." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006).

Phillips has pointed to nothing to imply that Teachman was lying when he said he chose the most qualified candidates. Phillips does not point to any statements made by Teachman, she does not controvert the personnel records of the male applicants, she does not allege that her personnel record was made up against her or inaccurate, and she has pointed to absolutely nothing showing that the real reason she was not promoted was because she is a woman. As such, summary judgment is warranted on the failure to promote claim.

## II. Sexual Harassment Claims

Phillips has sued Teachman under section 1983 and the City under Title VII for a "barrage of demeaning remarks and behaviors directed by fellow officers at Phillips due to her sex." [Am. Compl. ¶¶ 29-30.] "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Moser v. Indiana Dep't of Corrections*, 406 F.3d 895, 902 (7th Cir. 2005) (quoting *Cowan v. Prudential Ins. Co. of America*, 141 F.3d 751, 755 (7th Cir. 1998)).

To succeed on her claim, Phillips must establish that:

11

> (1) she was subject to unwelcome harassment; (2) the harassment was based on her sex; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability.

*Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir. 2005)(citing *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004)). In this case, Defendants dispute issues number three (whether the harassment was sufficiently severe or pervasive), and four (whether there is a basis for employer liability). However, I need only reach the third issue, because Phillips has failed to show the harassment was sufficiently severe or pervasive.

In considering whether the harassment was sufficiently severe or pervasive to constitute a hostile work environment, I need to contemplate the totality of the circumstances, including both the subjective and objective viewpoint. *Quantock v. Shared Marketing Servs., Inc.*, 312 F.3d 899, 903 (7th Cir. 2002). The offensiveness of a plaintiff's work environment is determined by examining all of the circumstances, such as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 534 (7th Cir. 1993) (quotation omitted).

Ordinarily, "simple teasing . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. at 775, 788 (1998).

Moreover, "'the occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers' generally does not create a work environment that a reasonable person would find intolerable." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995)).

Even taken as true, the events Phillips describes do not seem severe, humiliating, or physically threatening, or that they unreasonably interfered with her work performance. Phillips' supervisor told a younger cadet to watch out for Phillips because even though she was married, she would try to bed him and he told another supervisor she was promiscuous and should not be an FTO; another officer suggested Phillips was promiscuous when he insinuated that her last name changed frequently, and an officer told her to wear a miniskirt and high heels to a class. [Phillips Dep. at 48-50; 58-59; 88.] At most, Phillips "has described a limited number of incidents that are more reflective of run of the mill uncouth behavior than an atmosphere permeated with discriminatory ridicule and insult." *Racicot*, 414 F.3d at 678 (affirming district court's granting of summary judgment on sexual harassment claim in favor of defendant); *see also Baskerville*, 50 F.3d at 430 (reversing jury award, finding no sexual harassment). While I by no means condone these inappropriate and oafish comments, they are not offensive enough or pervasive enough to rise to the level of a hostile work environment. Consequently, summary judgment is warranted on these claims.

### III.  Retaliation Claims

The anti-retaliation provision of Title VII prohibits an employer from taking an

adverse employment action against an employee because she has filed an employment discrimination charge. *See* 42 U.S.C. § 2000e-3(a); *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 62 (2006). Like the failure to promote claim, for her retaliation claims, under the *McDonnell Douglas* burden-shifting approach, Phillips must first establish a prima facie case of retaliation. *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). Defendants must then advance a legitimate, nondiscriminatory reason for the adverse employment action, and the plaintiff must follow by showing that the Defendants' proffered reason is pretextual. *Id.* To establish a prima facie case of retaliation, Phillips must show that: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1038 (7th Cir. 1998) (citation omitted).

"Adverse employment action has been defined quite broadly in this circuit." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (citation omitted). Indeed, retaliatory conduct is actionable if the challenged actions are ones that a reasonable employee would find to be materially adverse such that the employee would be "dissuaded" from engaging in the protected activity. *Burlington*, 548 U.S. at 68; *see also Henry v. Milwaukee County*, 539 F.3d 573, 586-87 (7th Cir. 2008) ("Title VII's anti-retaliation provision prohibits only those employer actions that are likely to deter victims of discrimination from invoking the Act's remedial mechanisms.").

In this case, Phillips has established a prima facie case that she suffered an

adverse employment action. In the 14 years before she filed her EEOC charge, Phillips was the subject of three internal affairs investigations - yet in the year and a half after filing, she was the subject of 12 internal investigations. [Phillips Dec. ¶¶ 9-10.] Prior to filing her charge, the most severe discipline Phillips received was a written reprimand - but after filing, she received a total of more than 50 days suspension without pay for six unrelated incidents. *Id.* Additionally, she was required to wear a body camera [DE 44-4 at 6], received numerous letters of reprimand that went into her permanent file, was removed from the Hostage Negotiation Team, and eventually, was relieved of duty indefinitely with pay. Moreover, Phillips states that they "took away [her] police powers, so even though [she] had no duties a[t] SBPD [she] couldn't use the free time to work part-time for another agency. Without working [she] couldn't maintain her police officer certification." [Phillips. Aff. ¶ 35.] She has carried her burden of showing, for purposes of summary judgment, that she suffered an adverse employment action.

Phillips has also satisfied the third part of the prima facie test, that there is a causal link between the protected activity and the adverse action. "Generally, a plaintiff may establish such a link through evidence that the [adverse action] took place on the heels of the protected activity." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994). Here, where numerous investigations and disciplines followed right after Phillips filed her EEOC charge, this hurdle is satisfied.

Furthermore, there are several things which could lead a reasonable juror to determine that the reasons given for the discipline are mere pretext: several of the

15

allegations seem trivial (including punishing Phillips for submitting a late report). Additionally, Phillips was treated differently for disregarding the ShotSpotter alert when the other male officers only received informal counseling. Also, the timing of the investigations seems suspect (Phillips has alleged many of the investigations are for incidents in the past, and violate the collective bargaining agreement which requires that discipline be proposed within 60 days of commencing the investigation). Finally, recommending a 45-day suspension without pay for the Fox Street incident, where Phillips alleges that she was authorized to talk to the barricaded individual and merely got in trouble for requesting the audio recording, could be viewed as too harsh of a sanction. All of these things could lead a reasonable juror to determine that the proffered reasons for the disciplines are really just lies to cover up the true retaliatory intent. As such, summary judgment is inappropriate on the Title VII retaliation claims against the City of South Bend.

Although it is not completely clear, it seems like Phillips also alleges a claim under section 1983 for retaliation against Officer Ruszkowski. [Am. Compl. ¶ 31.] Defendants merely note the claims against the City of South Bend and Officer Ruszkowski [DE #44 at 16], but they do not differentiate between the different defendants, they do not discuss retaliation under section 1983 at all, and they only include a perfunctory statement in the reply brief that Ruszkowski would be "qualifiedly immune from liability." [DE #49 at 11.] In her opposition brief, Phillips only addresses the claims under Title VII (which covers employers), and does not

directly advance or discuss any claims against Officer Ruszkowski. I am not "obliged to research and construct legal arguments for the parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Because Defendants have not clearly moved for summary judgment on this ground, and have not provided me with any legal argument or authority, summary judgment is not proper on the retaliation claims under section 1983 against Officer Ruszkowski.

## Conclusion

For the reasons set forth above, the summary judgment motion [DE 43] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** on the failure to promote claim and the claims for sexual harassment, and those claims against the City of South Bend and Ronald Teachman are **DISMISSED WITH PREJUDICE**. Summary judgment is **DENIED** on the retaliation claims, and they remain pending against the City of South Bend and Scott Ruszkowski.

**SO ORDERED**.

ENTERED: September 6, 2017

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**